UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
KATIA ETIENNE,

Plaintiff,

-against-

RARE BEAUTY LLC,
ALLWORK, INC.

Defendants.
---------------------------------------------------------X

Civil Action No.: 1:26-cv-9242

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff KATIA ETIENNE ("Plaintiff" or "ETIENNE"), by her attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendants RARE BEAUTY LLC and ALLWORK, INC. (collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action to redress Defendants' unlawful discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); and New York Labor Law § 740.
2. Plaintiff seeks damages to redress the injuries she has suffered as a result of Defendants' discrimination against her because of her caregiver status and her association with her disabled mother; Defendants' interference with, and retaliation for, her protected family leave; Defendants' retaliation against her for complaining of unlawful treatment; and her resulting constructive discharge.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5(f)(3)), and 29 U.S.C. § 2617(a)(2).
4. This Court has supplemental jurisdiction over Plaintiff's claims under the NYSHRL, the NYCHRL, and New York Labor Law § 740 pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.
5. This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of New York, employed Plaintiff in the State of New York, and committed the acts complained of herein within the State of New York.
6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including in New York County, where Plaintiff primarily worked, and in Bronx County, where Plaintiff resides. Venue is also proper because the unlawful employment practices alleged herein were committed in this District and Plaintiff worked in this District.
7. Plaintiff has complied with all administrative prerequisites prior to filing this action.

## PARTIES

8. Plaintiff is an individual female who resides in Bronx County, New York.
9. At all times material, Defendant RARE BEAUTY LLC ("RARE BEAUTY") was and is a California limited liability company authorized to conduct business, and conducting business, in the State of New York.
10. At all times material, Defendant ALLWORK, INC. ("ALLWORK") was and is a foreign business corporation with a principal place of business in New Jersey, authorized to conduct business, and conducting business, in the State of New York.

11. At all times material, Defendants jointly employed Plaintiff. Each Defendant controlled Plaintiff's daily work activities, schedules, and assignments, and had the power to hire and fire her.

12. At all times material, Defendants employed KOURTNEY NICOLE ADDISON ("ADDISON") as a Regional Manager.

13. At all times material, ADDISON had the authority to direct Plaintiff's daily work activities and held the authority to take tangible employment actions against Plaintiff.

14. At all times material, Defendants employed KIM SANTACRUZ ("SANTACRUZ") as a Regional Manager.

15. At all times material, SANTACRUZ had the authority to direct Plaintiff's daily work activities and held the authority to take tangible employment actions against Plaintiff.

16. At all times material, Defendants employed TASHA GARY ("GARY") as Senior Manager of Field Team & Events.

17. At all times material, GARY had the authority to direct Plaintiff's daily work activities and held the authority to take tangible employment actions against Plaintiff.

## MATERIAL FACTS

18. In or around July 2024, Defendants hired Plaintiff as a Sales Specialist.

19. Plaintiff worked approximately 28 hours per week, primarily at retail locations in Manhattan, New York.

20. At all times material, Plaintiff was qualified for her position and performed her job duties satisfactorily.

21. On or about March 11, 2025, Plaintiff's mother suffered a cardiac arrest, fell into a coma, and required intensive medical care.

22. Plaintiff's mother's condition substantially limited one or more of her major life activities, including caring for herself, walking, speaking, breathing, and thinking, as well as the operation of major bodily functions, including her cardiovascular, neurological, and brain

functions. Plaintiff's mother therefore had a "disability" and/or "serious health condition" under all applicable statutes.

23. Plaintiff provided direct and ongoing care to her mother, who relied on Plaintiff for medical care and to meet the needs of daily living.

24. On or about March 21, 2025, Plaintiff applied for New York Paid Family Leave to care for her mother. Plaintiff's request for leave to care for her mother's serious health condition provided Defendants with notice sufficient to make them aware that Plaintiff needed leave that was potentially protected by the FMLA.

25. In or around April 2025, Defendants approved Plaintiff's Paid Family Leave and set her anticipated return-to-work date for the last week of May 2025.

26. Upon information and belief, Defendants did not provide Plaintiff with written notice of her eligibility for FMLA leave, of her rights and responsibilities under the FMLA, or of whether her leave was designated as FMLA leave.

27. Through Plaintiff's Paid Family Leave application and her communications with management, Defendants knew that Plaintiff's mother was critically ill and disabled, and that Plaintiff was her caregiver.

28. On or about May 20, 2025, Plaintiff contacted ADDISON regarding her reinstatement. ADDISON informed Plaintiff that Defendants had limited hours available for June and July and stated that they would contact Plaintiff when shifts became available. Plaintiff relied on this representation and reasonably believed she remained employed.

29. Around the same time, Plaintiff's mother's condition deteriorated. Plaintiff informed Defendants of her mother's worsening condition and requested an extension of her leave.

30. Defendants advised Plaintiff to take additional time off. Plaintiff relied on these assurances and understood that Defendants had approved an extension of her leave.

31. At no time during Plaintiff's leave did Defendants inform her that her position would not be held for her or that her continued leave would jeopardize her employment.

32. From approximately June 2025 through September 2025, Plaintiff cared for her critically ill mother. During this period, Defendants did not issue any written notice of termination, separation, or removal from employment.

33. On or about September 4, 2025, Plaintiff contacted ADDISON to request her reinstatement. ADDISON messaged Plaintiff, stating, "Unfortunately we are not hiring at the moment." This was the first time Defendants suggested that Plaintiff was no longer employed.

34. When Plaintiff requested clarification, ADDISON provided inconsistent and dismissive responses, claiming that Plaintiff had been terminated in or around June 2025 for failing to answer a call from SANTACRUZ, a call Plaintiff never received.

35. ADDISON further messaged Plaintiff, stating, "***We did not hear back from you after trying to contact you to give you shifts so we had to fill the position.***"

36. Plaintiff immediately emailed Defendants' Human Resources Department ("HR") seeking confirmation of her employment status.

37. On or about September 5, 2025, HR responded in writing and confirmed that Plaintiff remained employed.

38. ADDISON's representations that Defendants were "not hiring" and had to "fill the position" were false. Plaintiff remained employed, and her position was available to her.

39. Defendants did not restore Plaintiff to her position, or to an equivalent position, upon the conclusion of her leave, and instead falsely represented that her position was unavailable and had been filled.

40. On or about September 17, 2025, SANTACRUZ contacted Plaintiff regarding work assignments. During this conversation, SANTACRUZ told Plaintiff, "***If you were working for Sephora, you wouldn't still have a job, in what world can you go three months without speaking to your supervisors and expect to have a job?***" Plaintiff was shocked by Defendants' discriminatory and retaliatory comments.

41. SANTACRUZ's comment targeted the very period during which Plaintiff was on leave caring for her disabled mother, and reflected Defendants' hostility toward Plaintiff's

caregiving responsibilities and their perception that Plaintiff's association with her disabled mother rendered her unavailable, distracted, and insufficiently committed to her job.

42. On or about September 20, 2025, SANTACRUZ contacted Plaintiff about a same-day shift in Queens, New York, assigned to Plaintiff with less than three hours' notice, even though Plaintiff primarily worked in Manhattan.

43. On or about September 23, 2025, Plaintiff submitted a formal complaint to HR regarding last-minute scheduling, lack of communication, and ongoing retaliatory treatment by ADDISON and SANTACRUZ after she returned from Paid Family Leave.

44. In her complaint, Plaintiff opposed Defendants' treatment of her because she had taken leave to care for her disabled mother, which Plaintiff reasonably and in good faith believed constituted unlawful discrimination and retaliation.

45. After Plaintiff submitted her complaint, ADDISON and SANTACRUZ retaliated against her by excluding her from group communications, denying her training opportunities, and failing to notify her of events she had previously been scheduled to host.

46. HR failed to investigate or take any corrective action in response to Plaintiff's complaint.

47. On or about October 14, 2025, Defendants further retaliated against Plaintiff by reducing her work hours, citing unspecified "business needs." SANTACRUZ led communications regarding the reduction but failed to provide a legitimate explanation, despite Plaintiff's request for clarification as to whether the reduction was temporary or permanent.

48. Defendants' discriminatory and retaliatory actions created intolerable working conditions that left Plaintiff with no meaningful opportunity to continue her employment. As a direct result of Defendants' discrimination and retaliation, Plaintiff was constructively discharged on or about November 25, 2025.

49. Defendants subjected Plaintiff to adverse employment actions — including falsely representing that her position was unavailable, refusing to reinstate her, subjecting her to hostile and demeaning comments, excluding her from group communications and training, assigning her last-minute shifts, reducing her hours, and constructively discharging her —

because of her caregiver status and her known relationship and association with her disabled mother, because she requested and took protected leave to care for her mother, and because she complained to HR about Defendants' unlawful and discriminatory employment practices.

50. Defendants subjected Plaintiff to a hostile work environment because of her caregiver status and her association with her disabled mother, because she took protected leave to care for her mother, and because she complained to HR about Defendants' unlawful and discriminatory employment practices.

51. The close temporal proximity between Plaintiff's protected leave and complaints and Defendants' adverse actions, SANTACRUZ's statements, and Defendants' shifting and false explanations for refusing to reinstate Plaintiff give rise to an inference that Plaintiff's association with her disabled mother, her protected leave, and her complaints were motivating and determining factors in Defendants' adverse actions.

52. As a result of Defendants' discriminatory and retaliatory treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

53. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation that such employment entails. Plaintiff will also suffer future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. As Defendants' conduct has been calculated, malicious, willful, outrageous, and conducted with full knowledge of the law and with reckless indifference to Plaintiff's federally protected rights, Plaintiff demands punitive damages against all Defendants, jointly and severally.

55. The above are just some examples of the unlawful and discriminatory conduct to which Defendants subjected Plaintiff.

**AS A FIRST CAUSE OF ACTION**
**FOR ASSOCIATIONAL DISABILITY DISCRIMINATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(Against All Defendants)**

56. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

57. The ADA, 42 U.S.C. § 12112(a), provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

58. The ADA, 42 U.S.C. § 12112(b)(4), further provides that the term "discriminate against a qualified individual on the basis of disability" includes "*excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association*." (Emphasis added).

59. At all times material, Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8), as she was able to perform the essential functions of her position as a Sales Specialist.

60. At all times material, Plaintiff's mother had a "disability" within the meaning of 42 U.S.C. § 12102, and Defendants knew of Plaintiff's mother's disability and of Plaintiff's relationship and association with her.

61. Defendants discriminated against Plaintiff because of the known disability of her mother by, among other things, falsely representing that Plaintiff's position was unavailable, purporting to terminate her, refusing and delaying her reinstatement, subjecting her to hostile and demeaning comments regarding her absence to care for her mother, excluding her from group communications and training, assigning her last-minute shifts, reducing her hours, and constructively discharging her.

62. Defendants' adverse actions occurred under circumstances raising a reasonable inference that Plaintiff's mother's disability — and Defendants' perception that Plaintiff's caregiving responsibilities rendered her unavailable, distracted, and insufficiently committed to her job — was a determining factor in Defendants' decisions.

63. Defendants' conduct also created a hostile work environment that was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and that culminated in her constructive discharge.

64. Defendants engaged in the foregoing discriminatory practices with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

65. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A SECOND CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE AMERICANS WITH DISABILITIES ACT**
**(Against All Defendants)**

66. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

67. The ADA, 42 U.S.C. § 12203(a), provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

68. The ADA, 42 U.S.C. § 12203(b), further provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter."

69. Plaintiff engaged in protected activity under the ADA by opposing Defendants' discriminatory treatment of her because of her association with, and her care for, her

disabled mother, including by objecting to ADDISON's and SANTACRUZ's treatment of her upon her return from leave and by submitting a formal complaint to HR on or about September 23, 2025. Plaintiff reasonably and in good faith believed that the conduct she opposed was unlawful under the ADA.

70. Defendants knew of Plaintiff's protected activity.

71. Following and because of Plaintiff's protected activity, Defendants took materially adverse actions against Plaintiff, including excluding her from group communications, denying her training opportunities, failing to notify her of events she had been scheduled to host, reducing her hours, and constructively discharging her. These actions would dissuade a reasonable employee from making or supporting a complaint of discrimination.

72. A causal connection exists between Plaintiff's protected activity and Defendants' adverse actions, as demonstrated by, among other things, the close temporal proximity between them and Defendants' failure to investigate or remedy Plaintiff's complaint.

73. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A THIRD CAUSE OF ACTION**
**FOR INTERFERENCE UNDER**
**THE FAMILY AND MEDICAL LEAVE ACT**
**(Against All Defendants)**

74. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

75. The FMLA, 29 U.S.C. § 2612(a)(1)(C), entitles an eligible employee to a total of twelve (12) workweeks of leave during any twelve-month period "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."

76. The FMLA, 29 U.S.C. § 2614(a)(1), provides that an eligible employee who takes FMLA leave "shall be entitled, on return from such leave — (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be

restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

77. The FMLA, 29 U.S.C. § 2615(a)(1), provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

78. Upon information and belief, at all times material, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2), and each Defendant was an "employer" within the meaning of 29 U.S.C. § 2611(4).

79. In the alternative, Defendants are equitably estopped from contesting Plaintiff's eligibility for leave under the FMLA and her entitlement to restoration. Defendants approved Plaintiff's leave to care for her mother, set a return-to-work date, advised Plaintiff to take additional time off when her mother's condition deteriorated, and never informed Plaintiff that her leave was not protected or that her position would not be held for her. Plaintiff reasonably and detrimentally relied on Defendants' representations and conduct in taking and extending her leave rather than returning to work.

80. Plaintiff's mother had a "serious health condition" within the meaning of 29 U.S.C. § 2611(11), and Plaintiff provided Defendants with notice of her need for leave to care for her mother sufficient to make Defendants aware that her leave was potentially FMLA-qualifying.

81. Defendants interfered with, restrained, and denied Plaintiff's exercise of her rights under the FMLA by, among other things, failing to provide Plaintiff with the eligibility, rights-and-responsibilities, and designation notices required by 29 C.F.R. §§ 825.300 and 825.301; failing to designate her leave as FMLA leave; failing to restore Plaintiff to her position or to an equivalent position upon the conclusion of her leave; falsely representing that her position was unavailable and had been filled; and, upon her return, reducing her hours and otherwise denying her the terms and conditions of employment to which she was entitled.

82. Defendants' violations of the FMLA were not in good faith, and Defendants did not have reasonable grounds for believing that their conduct did not violate the FMLA. Plaintiff is therefore entitled to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

83. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE FAMILY AND MEDICAL LEAVE ACT**
**(Against All Defendants)**

84. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. The FMLA, 29 U.S.C. § 2615(a)(2), provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

86. The FMLA's implementing regulations further provide that an employer is "prohibited from discriminating against employees or prospective employees who have used FMLA leave," and that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c).

87. Plaintiff exercised rights protected by the FMLA by requesting and taking leave to care for her mother's serious health condition, and opposed practices made unlawful by the FMLA by objecting to Defendants' refusal to reinstate her and to their adverse treatment of her because she had taken leave, including through her September 23, 2025 complaint to HR.

88. Defendants knew that Plaintiff had exercised her FMLA rights and had opposed Defendants' unlawful practices.

89. Because Plaintiff exercised her FMLA rights and opposed Defendants' unlawful practices, Defendants took adverse actions against her, including refusing to reinstate her, falsely representing that her position was unavailable, subjecting her to hostile comments

regarding her absence on leave, excluding her from group communications, denying her training opportunities, failing to notify her of events she had been scheduled to host, assigning her last-minute shifts, reducing her hours, and constructively discharging her.

90. Defendants' retaliatory intent is demonstrated by, among other things, SANTACRUZ's statement, "in what world can you go three months without speaking to your supervisors and expect to have a job," which directly referenced the period of Plaintiff's leave; Defendants' shifting and false explanations for refusing to reinstate Plaintiff; and the close temporal proximity between Plaintiff's protected activity and Defendants' adverse actions.

91. Defendants' violations of the FMLA were willful and not in good faith, entitling Plaintiff to liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).

92. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A FIFTH CAUSE OF ACTION**
**FOR CAREGIVER STATUS DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

93. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94. The New York City Administrative Code § 8-107(1)(a) provides that it shall be an unlawful discriminatory practice "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . *caregiver status* . . . of any person: (1) [t]o represent that any employment or position is not available when in fact it is available; (2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." (Emphasis added).

95. The New York City Administrative Code § 8-102 defines a "caregiver" as "a person who provides direct and ongoing care for a minor child or a care recipient," and defines a "care recipient" as "a person with a disability who: (i) is a covered relative, or a person who

resides in the caregiver's household; and (ii) relies on the caregiver for medical care or to meet the needs of daily living." A "covered relative" includes the caregiver's parent.

96. At all times material, Plaintiff was a caregiver for her mother, who was a care recipient within the meaning of N.Y.C. Admin. Code § 8-102.

97. Defendants engaged in an unlawful discriminatory practice by falsely representing that Plaintiff's position was not available, purporting to terminate Plaintiff, delaying and obstructing her reinstatement, reducing her hours, constructively discharging her, and otherwise treating her less well than other employees because of her caregiver status.

98. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title 8 of the New York City Administrative Code.

99. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR ASSOCIATIONAL DISABILITY DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

100. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. The New York City Administrative Code § 8-107(1)(a) further provides that it shall be an unlawful discriminatory practice "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . *disability* . . . of any person: (1) [t]o represent that any employment or position is not available when in fact it is available; (2) [t]o refuse to hire or employ or to bar or to discharge from employment such person; or (3) [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." (Emphasis added).

102. N.Y.C. Admin. Code § 8-107(20) further provides: "*The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person* because of the actual or perceived race, creed, color,

national origin, *disability,* age, sexual orientation, uniformed service or immigration or citizenship status *of a person with whom such person has a known relationship or association*." (Emphasis added).

103. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her known relationship and association with her disabled mother.

104. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title 8 of the New York City Administrative Code.

105. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(Against All Defendants)**

106. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107. The New York City Administrative Code § 8-107(7) provides that it shall be an unlawful discriminatory practice "for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . . ."

108. Defendants engaged in an unlawful discriminatory practice in violation of N.Y.C. Admin. Code § 8-107(7) by retaliating against Plaintiff because of her opposition to Defendants' unlawful employment practices.

109. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Title 8 of the New York City Administrative Code.

110. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS AN EIGHTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE NEW YORK STATE EXECUTIVE LAW**
**(Against All Defendants)**

111. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

112. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice "[f]or any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

113. Defendants engaged in an unlawful discriminatory practice by retaliating against, constructively discharging, and otherwise discriminating against Plaintiff with respect to the terms, conditions, or privileges of her employment because of her opposition to Defendants' unlawful practices.

114. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

115. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**NEW YORK LABOR LAW § 740**
**(Against All Defendants)**

116. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

117. New York Labor Law § 740(2) provides that "[a]n employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer

that the employee reasonably believes is in violation of law, rule or regulation . . . ; [or] (c) objects to, or refuses to participate in any such activity, policy or practice."

118. New York Labor Law § 740(1)(e) defines "retaliatory action" to include "an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate against any employee . . . including (i) adverse employment actions or threats to take such adverse employment actions against an employee in the terms of conditions of employment including but not limited to discharge, suspension, or demotion."

119. New York Labor Law § 740(1)(f) defines a "supervisor" to include any individual within an employer's organization "who has managerial authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains."

120. At all times material, Plaintiff was an "employee," and each Defendant was an "employer," within the meaning of New York Labor Law § 740(1)(a) and (b).

121. New York Workers' Compensation Law § 120 prohibits an employer from discharging, failing to reinstate pursuant to Workers' Compensation Law § 203-b, or in any other manner discriminating against an employee because the employee claimed Paid Family Leave benefits. Workers' Compensation Law § 203-b entitles an employee returning from Paid Family Leave to be restored to her position or to a comparable position.

122. On or about September 23, 2025, Plaintiff disclosed to HR, and objected to, Defendants' activities, policies, and practices of refusing to reinstate her following her Paid Family Leave and subjecting her to adverse treatment because she had taken that leave, which Plaintiff reasonably believed violated Workers' Compensation Law §§ 120 and 203-b, among other laws, rules, and regulations.

123. HR had managerial authority to take corrective action regarding the violations of which Plaintiff complained and was therefore a "supervisor" within the meaning of New York Labor Law § 740(1)(f).

124. Because of Plaintiff's disclosure and objection, Defendants, through their agents, including ADDISON and SANTACRUZ, took retaliatory action against Plaintiff by, among other things, excluding her from group communications, denying her training opportunities, failing to notify her of events she had been scheduled to host, reducing her hours, and constructively discharging her.

125. This action is timely, as it is brought within two years after the retaliatory actions were taken. N.Y. Lab. Law § 740(4)(a).

126. Plaintiff is entitled to all relief available under New York Labor Law § 740(5), including reinstatement or front pay in lieu thereof, compensation for lost wages, benefits, and other remuneration, reasonable costs, disbursements, and attorneys' fees, a civil penalty, and punitive damages.

127. Defendants violated the above, and Plaintiff suffered numerous damages as a result.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial, for: a declaration that Defendants' conduct violated the ADA, the FMLA, the NYSHRL, the NYCHRL, and New York Labor Law § 740; compensatory damages, including back pay, front pay, lost benefits, and damages for emotional distress, pain and suffering, and loss of enjoyment of life; liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); punitive damages; a civil penalty pursuant to New York Labor Law § 740(5)(f); reinstatement, or front pay in lieu thereof; pre-judgment and post-judgment interest; attorneys' fees, costs, and disbursements of this action, including pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 2617(a)(3), N.Y.C. Admin. Code § 8-502(g), and New York Labor Law § 740(5)(e); and such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 21, 2026

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Alexander Cabeceiras*
Alexander G. Cabeceiras, Esq.
450 7th Avenue, Floor 30
New York, New York 10123
(332) 910-5676